UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

CASE NO. 1:09-CR-170

v.

HON. ROBERT J. JONKER

MARTELL LAVAR PEOPLES,

    Defendant.

_____/

## OPINION

Defendant Martell Peoples moves to suppress evidence (docket # 20) discovered during a search that occurred before the Supreme Court published its opinion in *United States v. Gant*, — U.S. —, 129 S. Ct. 1710, 1723 (2009). The Government concedes that the search did not meet the *Gant* standard, but it argues (docket # 23, 24) the search is valid anyway because police relied in good faith on established pre-*Gant* law in conducting the search. The operative facts are undisputed. The Court has conducted an evidentiary hearing, heard oral argument, and invited supplemental memoranda. The motion is ready for decision, and the Court grants Mr. Peoples' motion to suppress.

## BACKGROUND

In the early morning of February 8, 2009, Officer Brian Dozeman of the Holland Police Department observed a Cadillac obstructing the road near an intersection. Officer Dozeman initiated a traffic stop on the car after it began to drive away from the intersection. Martell Lavar Peoples,

whose license was suspended, was driving the car. Officer Dozeman arrested Mr. Peoples for driving on a suspended license, second offense, and placed him in handcuffs in the patrol car.

While Mr. Peoples was in the patrol car, Officer Dozeman and a second officer, Officer Reuschel, searched the passenger compartment of the vehicle. The officers found approximately $800 in cash wrapped in a napkin in the driver's side door lower pocket. The officers then requested assistance from a canine unit, which alerted to the middle console of the car at the floorboard. Under the carpet in that area, the canine officer, Officer Scott Doza, found a small bag of marijuana and some Zig Zag papers. Later in the search, the canine unit alerted "deep" in the back portion of the arm rest in the back seat, which indicated to Officer Doza that the alert pointed to the trunk. Officer Doza then searched the corresponding area of the trunk and discovered a white sock containing a Glock .40 caliber semiautomatic pistol with a loaded magazine.

A grand jury indicted Mr. Peoples as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Peoples' motion seeks to suppress evidence of the handgun. The marijuana, zig zag papers and cash are not at issue on this motion.

## **ANALYSIS**

**I.     Introduction**

On April 21, 2009, the Supreme Court held that a warrantless search of a car incident to arrest violates the Fourth Amendment unless "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," or "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *United States v. Gant*, — U.S. —, 129 S. Ct. 1710, 1723 (2009). The Government concedes that in this case, the gun was discovered as the

result of search incident to arrest that violated the Fourth Amendment under *Gant*. The Government further concedes that no other exception to the warrant requirement applies to make the search legal.

The Government contends, however, that the Fourth Amendment violation should not result in suppression of the gun because the officers acted in good-faith reliance on then-existing Sixth Circuit precedent. At the time of the search, Sixth Circuit precedent permitted the officers to search the car incident to Mr. Peoples' arrest while Mr. Peoples was handcuffed in the police car. *See, e.g.*, *United States v. Nichols*, 512 F.3d 789, 797 (6th Cir. 2008); *United States v. Patterson*, 993 F.3d 121, 123-24 (6th Cir. 1993). The Government contends that the good-faith exception to suppression, articulated in *United States v. Leon*, 468 U.S. 897 (1984), and its progeny, excuses suppression in this case.

Whether the good-faith doctrine excuses suppression of evidence discovered during pre-*Gant* searches invalidated by *Gant* has generated a circuit split. The Tenth Circuit recently held that the good-faith exception includes an officer's reliance on "the settled case law of a United States Court of Appeals . . . later rendered unconstitutional by a Supreme Court decision," and applied that rule to excuse suppression of evidence discovered during a search later invalidated by *Gant*. *United States v. McCane*, 573 F.3d 1037, 1044 (10th Cir. 2009). The Ninth Circuit, faced with an almost identical factual scenario, held to the contrary. It found the good-faith exception to be in tension with the rules regarding retroactive application of a new rule to cases on direct review, and it concluded that it could "not apply the good faith exception [to a search invalidated by *Gant*] without creating an untenable tension within existing Supreme Court law." *United States v. Gonzalez*, No. 07-30098, — F.3d — , 2009 WL 2581738, *3 (9th Cir. Aug. 24, 2009). Accordingly, the issue has been analyzed from fundamentally different perspectives by the two Circuits that have

considered it. This Court does not agree that the Supreme Court's retroactivity rules prohibit applying the good-faith doctrine to excuse suppression in this case, but the Court still grants Mr. Peoples' motion to suppress because good-faith reliance upon case law cannot excuse suppression under the current formulation and application of the good-faith doctrine. Accordingly, Mr. Peoples' motion to suppress the evidence must be granted.

## II.    Retroactivity

*Gant*'s holding must undoubtedly apply to all cases pending on direct review. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987); *United States v. Johnson*, 457 U.S. 537, 562 (1982). In *Gant*, the Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 129 S. Ct. at 1723. It further held that a search incident to arrest is unreasonable if neither of these circumstances exists. *Id.* at 1723-24. Because it concluded that "[t]he Arizona Supreme Court correctly held that this case involved an unreasonable search," the Court affirmed "the judgment of the State Supreme Court." *Id.* at 1724. Accordingly, the search here unquestionably violated the Fourth Amendment under *Gant*, as even the Government concedes, and as this Court now holds. The remaining question, however, is whether the admitted Fourth Amendment violation warrants application of the exclusionary rule.

In analyzing the precise contours of *Gant*'s holding, the Ninth Circuit concluded that "the Supreme Court upheld in full the decision of the Arizona Supreme Court, which not only found the search at issue unconstitutional, but ordered the suppression of the evidence found as a result of the unconstitutional search." *Gonzalez*, 2009 WL 2581738 at *2 (citing *Gant*, 129 S. Ct. at 1724). It

4

certainly is true that the Arizona Supreme Court ordered suppression of the evidence in the state-court case underlying *Gant*. *State v. Gant*, 162 P.3d 640, 641 (Ariz. 2007). In *State v. Gant*, the Arizona Supreme Court considered as a matter of first impression "whether the search incident to arrest exception to the Fourth Amendment's warrant requirement permits the warrantless search of an arrestee's car when the scene is secure and the arrestee is handcuffed, seated in the back of a patrol car, and under the supervision of a police officer." *Id.* The Arizona Supreme Court held that the warrantless search "was not justified by the search incident to arrest exception to the Fourth Amendment's warrant requirement," and it concluded that "[t]he evidence obtained as a result of the unlawful search must therefore be suppressed." *Id.* at 646. However, the Arizona Supreme Court did not consider whether the good-faith exception to suppression applied to the case before it. *See id.*

The Supreme Court of the United States also did not consider whether the good-faith exception to suppression applied to the case. Arizona petitioned for certiorari, and the Supreme Court granted certiorari on the following question: "Does the Fourth Amendment require law enforcement officers to demonstrate a threat to their safety or a need to preserve evidence related to the crime of arrest in order to justify a warrantless vehicular search incident to arrest conducted after the vehicle's recent occupants have been arrested and secured?" *Arizona v. Gant*, 128 S. Ct. 1443 (2008). The Court did not grant certiorari on any suppression issue. *See id.* Nor did the Court discuss suppression in any context in its opinion. *See* 129 S. Ct. at1724. Review of the parties' briefs to the Supreme Court further shows that the parties made no arguments to the Court regarding the good-faith exception to suppression.

5

The mere fact that the Court affirmed the Arizona Supreme Court does not make the entire holding of the Arizona Supreme Court the holding in *Gant*. Instead, the Court's holding is limited to the questions on which it granted certiorari. S. Ct. R. 14.1(a); *Yee v. Escondido, Cal.*, 503 U.S. 519, 535-36 (1992). Under Supreme Court Rule 14.1(a), "[o]nly the questions set out in the petition [for certiorari], or fairly included therein, will be considered by the Court." The Court treats the Rule as central to effective advocacy in and decision making by the Supreme Court. *Yee*, 503 U.S. at 535-36. Accordingly, the Court considered in *Gant* only the question on which it granted certiorari, *see id.*, which was whether the search violated the Fourth Amendment. *See Arizona v. Gant*, 128 S. Ct. at 1443. The Supreme Court did *not* hold that the evidence discovered as a result of the unreasonable search had to be suppressed. *See id.*; *see also McCane*, *Id.* 573 F.3d at 1044 n.5.

This conclusion also is consistent with the holding reached by the Sixth Circuit in *United States v. Lopez*, 567 F.3d 755, 757-58 (6th Cir. 2009). In *Lopez*, the Sixth Circuit held that the pre-*Gant* search of the defendant's vehicle violated the Fourth Amendment as interpreted in *Gant*. *Id.* at 758. The Court did not automatically order suppression as a result of its holding, however, even though the case was on direct review. *See id.* Instead, it remanded the case "for further proceedings consistent with" its holding. *Id.* The Sixth Circuit's holding in *Lopez* suggests that this Court should not mechanically suppress the evidence as a direct result of the holding in *Gant*, but instead should apply *Gant* only to determine whether the search violated the Fourth Amendment. *See id.*

This Court applies fully *Gant*'s holding by concluding, as conceded by the Government, that the police violated the Fourth Amendment in this case when they searched Mr. Peoples' vehicle incident to his arrest even though he was not "within reaching distance of the passenger compartment at the time of the search" and it was not "reasonable to believe the vehicle contains evidence of the

offense of arrest." *See Gant*, 129 S. Ct. at 1723. Because this Court has applied fully *Gant*'s holding to this case, the retroactivity doctrine is satisfied. *See Griffith*, 479 U.S. at 328; *Johnson*, 457 U.S. at 562. Accordingly, this Court respectfully disagrees with the holding of the Ninth Circuit in *Gonzalez*, and it concludes that the retroactivity rules do not preclude consideration of whether the good-faith doctrine excuses suppression in this case. *See id.*; *Gant*, 129 S. Ct. at 1723-24; *contra Gonzalez*, 2009 WL 2581738 at *2-3.

### III. Good-Faith Reliance on Case Law

The next question is whether the good-faith doctrine applies in this case to excuse suppression. Whether good-faith reliance on case law can excuse application of the exclusionary rule is an issue addressed by only three United States Courts of Appeals. Of those three, the Fifth Circuit and the Tenth Circuit have held that the good-faith doctrine excuses application of the exclusionary rule to searches premised upon case law of a United States Court of Appeals prior to the change of that law. *See McCane*, 573 F.3d at 1045; *United States v. Jackson*, 825 F.2d 853, 866 (5th Cir. 1987); *see also United States v. Bengivenga*, 845 F.2d 593, 594 n.2 (5th Cir. 1988). The Tenth Circuit's holding in *McCane* addressed the precise issue before this Court: a search that was valid under precedent invalidated by *Gant*. *See* 573 F.3d at 1045. The Seventh Circuit, however, has reached the opposite conclusion. *United States v. 15324 County Highway E.*, 332 F.3d 1070, 1075-76 (7th Cir. 2003). In *15324 County Highway East*, the Seventh Circuit declined to uphold a search based upon good-faith reliance on Seventh Circuit precedent later overturned by a Supreme Court decision. *Id.* (holding that extending the good-faith exception to reliance on case law would have "undesirable, unintended consequences," including inviting "officers in the field to engage in

7

the tasks–better left to the judiciary and members of the bar more generally–of legal research and analysis."). The Sixth Circuit has not addressed the issue.

As a basic proposition, the "central concern underlying the Fourth Amendment [is] the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." *Gant*, 129 S. Ct. at 1720. The Fourth Amendment requires that the executive obtain a warrant before conducting a search; a search "conducted outside the judicial process, without prior approval by judge or magistrate, [is] *per se* unreasonable under the Fourth Amendment." *Id.* at 1716. Courts "have expressed a strong preference for warrants" because "a search warrant provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime." *Leon*, 468 U.S. at 914 (internal quotation marks omitted). The requirement also honors the separation of powers principle deeply woven into our constitutional fabric by ensuring that at least two branches of government authorize a search before it occurs. The courts have crafted only "a few specifically established and well-delineated exceptions" to the warrant requirement. *Gant*, 129 S. Ct. at 1716.

The exclusionary rule is a remedial device to protect the practical value of the Fourth Amendment by proscribing the introduction of illegally seized evidence. *See Leon*, 468 U.S. at 906. This remedy deters the executive branch from stepping over the Fourth Amendment boundaries delineated by the courts. Without this remedy, the Fourth Amendment would be of primarily academic interest and would not actually function to constrain executive-branch power in the field. The Supreme Court has recognized, however, that the exclusionary rule is an extraordinary remedy not required by the text of the Fourth Amendment. *See Herring*, 129 S. Ct. at 700. Accordingly,

courts must apply it as a last resort, not a first impulse. *Id.* Courts have been careful not to apply the exclusionary sanction to exclude illegally seized evidence in all cases or against all persons, even where there is a clear violation of the Fourth Amendment. *See Leon*, 468 U.S. at 906. Moreover, the exclusionary rule is limited by several court-created exceptions. *See id.*

One limitation on the exclusionary rule is the good-faith doctrine. *See id.* As originally articulated in *Leon*, the good-faith exception excuses suppression of illegally obtained evidence if the officers relied in objectively reasonable good faith on a warrant that was later found unsupported by probable cause. *See id.* at 918-19 & n.20, 926. In the companion case to *Leon*, the good-faith exception excused suppression where a warrant was invalid because a judge forgot to make "clerical corrections." *Massachusetts v. Sheppard*, 468 U.S. 981, 991 (1984). Since then, the good-faith doctrine has been extended to objectively reasonable good-faith reliance on a state statute, or on warrants that were invalid for reasons other than lack of probable cause. The exception first was "extended . . . to warrantless administrative searches performed in reliance on a statute later declared unconstitutional," *United States v. Krull*, 480 U.S. 340, 349-50 (1987), then "to police reliance upon mistaken information in a court's database indicating an arrest warrant was outstanding," *Arizona v. Evans*, 514 U.S. 1, 14-16 (1995). Most recently, the exception was extended to police reliance upon an arrest warrant that had been rescinded but not removed from the database as a result of "the negligent mistake of a fellow law enforcement employee," *Herring v. United States*, 129 S. Ct. 695, 698 (2009). Nevertheless, the Supreme Court has been careful to preserve the bedrock protections of the Fourth Amendment when it has crafted exceptions to the warrant requirement and expansions of the good-faith doctrine.

Expanding the good-faith doctrine to permit reliance on case law would take the exception in a new and untenable direction. It would for the first time permit use of illegally obtained evidence based on the good faith of the officer alone, unchecked by the judgment of either the legislature (as it was in *Krull*) or the judiciary (as it was in *Leon*, *Evans*, and *Herring*). It would permit an officer to determine whether she has probable cause to search, and then permit her unilateral determination to excuse suppression even after a court determines the search to have violated the Fourth Amendment. This expansion of the doctrine is untenable because good-faith reliance on case law is materially different than good-faith reliance on a warrant. A warrant is specifically addressed to the particular facts and targets at issue, and it is issued in advance of the actual search by the executive branch. Case law, in contrast, is inherently retrospective and focused on a situation other than the one at hand. Reliance on case law necessarily would require an officer to extrapolate from prior scenarios and determine, in the first instance, whether the prior cases are sufficient to establish probable cause in the new matter. This process would be significantly different from excusing the officer's reasonable belief that a warrant exists, reasonable reliance on a later invalidated warrant, or reasonable reliance on a later invalidated statute.

Interpreting Fourth Amendment case law is a challenging task even for those charged with doing so on a daily basis. *Cf. Gant*, 129 S. Ct. at 1718. As the Supreme Court recently noted, its opinion in *New York v. Belton*, 453 U.S. 454 (1981), was "widely understood [by courts] to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search," "[d]espite the textual and evidentiary support" to the contrary. *Id.* In reading *Belton* and applying it to new factual scenarios, Courts of Appeals gave "different answers to the question whether a vehicle must be within an arrestee's reach

to justify a vehicle search incident to arrest" and developed conflicting holdings "regarding how proximate close in time to the arrest and how proximate to the arrestee's vehicle an officer's first contact with the arrestee must be . . . , and whether a search is reasonable when it commences or continues after the arrestee has been removed from the scene." *Id.* at 1718, 1720-21. Additionally, decisions interpreting *Belton* regularly failed to impose on vehicle searches incident to arrest the limitations articulated in *Chimel v. California*, 395 U.S. 752 (1969), despite the clear statement in *Belton* that *Belton* "in no way alter[ed] the fundamental principles established in the *Chimel* case." *Id.* at 1719 (quoting *Belton*, 453 U.S. at 460). In short, the very bodies constitutionally charged with interpreting the Fourth Amendment and applying it to new factual scenarios reached widely varying and conflicting results in applying just one case to new factual scenarios. *See id.* Making a probable cause determination is even more challenging than interpreting the Fourth Amendment generally. *Cf. Leon*, 468 U.S. at 914. Probable cause determinations are fact specific and particularly difficult to make in marginal cases. *Id.* Reasonable minds frequently may differ, even among members of the judiciary, on the question whether particular circumstances establish probable cause. *Id.*

The difficulties facing courts making probable cause determinations and interpreting case law, however, are small in comparison to those facing police officers. *Id.* Officers are particularly poorly situated to determine whether the facts of a particular case establish probable cause to search because they lack "the detached scrutiny of a neutral magistrate." *Id.* at 913. Indeed, the "judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime" is considerably less reliable than that of a neutral court. *Id.* at 913-14 (internal quotation marks omitted). The expansions of the good-faith doctrine have shown that courts do not wish to entrust to the executive branch law enforcement the unilateral power to make probable cause determinations

based on their own reading of case law. Each expansion has been carefully crafted to create a set of short-hand tools that permit the police to act *without* having to engage in the interpretive activities generally reserved to the courts. In *Leon*, for instance, the Court held that an officer could rely on a facially valid warrant because "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *See Leon*, 468 U.S. at 921. Similarly, in *Krull*, the good-faith doctrine excused suppression because "the defect in the statute was not sufficiently obvious" that a reasonable police officer would know that the statute was invalid. 480 U.S. at 359. In *Herring*, the Court held that police officers could not be deterred from negligently maintaining their warrant database and should be permitted to rely on what appeared to be a valid warrant. 129 S. Ct. at 702. Because the police officers are poorly positioned to make probable cause determinations and interpret case law, courts place more trust in a probable cause determination made by a magistrate than a police officer. *See Leon*, 468 U.S. at 914.

Permitting a police officer to rely on case law as an excuse to suppression would circumvent the process of obtaining a reliable probable cause determination from a magistrate. Moreover, it would empower the executive branch to conduct an illegal search without penalty so long as the officer could point to a case from which he could reasonably extrapolate that his actions were legal. In short, officers would have the first crack at interpreting the Fourth Amendment and determining what the law *permits* in a new situation, without risking any sanction if they overstep. This is precisely contrary to the general separation of powers established by the Constitution, and to the particular application of that principle in the Fourth Amendment.

The result additionally is contrary to the "objective reasonableness" requirement of the good-faith doctrine, which demands that officers be trained and have "knowledge of what the law prohibits." *Id.* at 919 n.20. As noted by the Supreme Court, "[t]he key to the exclusionary rule's effectiveness . . . lies . . . in the impetus it has provided to police training programs that make officers aware of the limits imposed by the fourth amendment and emphasize the need to operate within those limits." *Id.* at 919 n.20 (quotation omitted). Indeed, "'good faith' is inconsistent with closing one's mind to the possibility of illegality." *Id.* at 919 n. 20 (quotation omitted). Permitting good-faith reliance on case law would encourage officers to close their minds "to the possibility of illegality" and to self-justify expansions beyond the limits of the Fourth Amendment as articulated by the neutral courts. *See id.* at 919 n.20. At a minimum, it would encourage officers to test the limits of what case law would possibly permit. Today we may be looking at "well-established circuit law." But is one panel decision well established? What if the opinion is entered two-to-one over a dissent: Is it still well established? Suppose the circuit has a series of unpublished decisions on point? What about an issue the circuit has not yet addressed in any form, but that has received a unanimous decision from other circuits permitting the search? This brand of line drawing is the natural responsibility and task of the judicial branch, not of officers in the field.

Extending *Leon* good-faith to include reliance on court precedent thus involves an interpretive step on the part of the police that is totally absent from and unjustified by any previous Supreme Court application of a good faith exception to the exclusionary rule. It also cuts out of the process the general requirement of neutral, third-party review that is fundamental to protecting the rights guaranteed by the Fourth Amendment. Extending the good-faith exception to cover an officer's good-faith interpretation of case law would in short order become functionally

13

indistinguishable from an exception that applied whenever an officer could establish good faith on most any basis. This would effectively allow the exception to swallow the rule and would seriously undermine the protection of the Fourth Amendment. Accordingly, this Court rejects the Government's request to extend the good-faith exception to include reliance on court precedent.

## **Conclusion**

Under *Gant*, the search in this case unquestionably violated the Fourth Amendment, as even the government concedes. This conclusion does not, in this Court's view, automatically require suppression because the Court can fully apply *Gant*'s holding without ordering suppression. Nevertheless, the Court concludes that it must grant Mr. Peoples' motion to suppress here because good-faith reliance upon case law cannot excuse suppression under the current formulation and application of the good-faith doctrine, and because no other justification for avoiding suppression has been preferred or supported on the record. Mr. Peoples' motion to suppress the evidence therefore is granted.


Dated:   October 29, 2009             /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      UNITED STATES DISTRICT JUDGE